IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANNETTE GRAVES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| FRITO-LAY, INC. | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE:

Plaintiff Annette Graves ("Graves" or "Plaintiff") complains of Defendant Frito-Lay, Inc. ("Defendant" or "Frito-Lay") , as follows:

### I.  Introduction

This is an action for monetary damages, pursuant to Title VII of the Civil Rights Act of 1964 as.amended, 42 U.S.C. §§ 2000e, et seq. (hereinafter "Title VII") to redress Defendant's unlawful employment practices against Plaintiff including Defendant's unlawful discrimination and retaliation against Plaintiff because of her race and engaging in protected conduct, respectively.

### II.  The Parties

1.      Plaintiff is an  individual residing in Dallas County, Texas.

PLAINTIFF'S ORIGINAL COMPLAINT - PAGE - 1

2.      Defendant Frito-Lay, Inc. is a Delaware corporation with its corporate headquarters and principal place of business in Dallas, Texas. Defendant may be served process through its registered agent, CT Corporation, 1999 BRYAN ST., STE. 900 DALLAS, TX 75201.

### III.  Jurisdiction and Venue

3.      This Court has jurisdiction over the claims herein pursuant to 28 U.S. C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiffs civil rights under Title VII. This Court has subject matter jurisdiction over this action under 42 U.S.C. 2000e *et seq.* and because the amount in controversy is within the Court's jurisdictional limits.

**4.**      Venue is proper in this District pursuant to 28 U.S.C. §§ 139l(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District.

### IV. Facts

5.      Defendant is a manufacturer and distributor of various snack products.

6.      Plaintiff is a veteran.  She began with Frito-Lay as a Quality Control Analyst making $15 an hour in January 2008.  Plaintiff received a $1 pay increase bringing her pay rate to $16 an hour in 2009.   That would be the last wage increase Plaintiff received for over the remaining 11 years of her employment.  After years of being on the team with no raise Plaintiff approached management to inquire about a raise. Plaintiff was told they would "look into it, but that it [a raise] was not in the budget at

the moment."   Plaintiff was then assured that her raise would be included in the upcoming quarter's budget. That raise never came.  On information and belief, white employees performing a similar job to Plaintiff were paid higher compensation than Plaintiff.

7.      Plaintiff has multiple degrees and was at all times overqualified for her entry level position with Frito-Lay.   She received her first degree in 2004 in Computer Technology with a minor in Telecommunications from Midlands College in South Carolina in 2004.   That same year, she received her Networking Certificate from Midlands College.   Later in 2010, Plaintiff received an Office Systems Technology Degree from Collin College.   She next received a Bachelor of Science from UNT in 2017.

8.      Plaintiff's manager for the majority of her career with Defendant was Matt Norwood, a white male.   Mr. Norwood was the Director of Merchandising for Frito Lay.

9.      Throughout her employment with Frito Lay, Mr. Norwood went out of his way to avoid Plaintiff and other black employees.    In an effort to change this, Plaintiff requested several meetings with Mr. Norwood which he declined. At one point in approximately late 2016, Plaintiff ran into Mr. Norwood in the hallway and approached him for a meeting to talk about how she could advance in the company. In that meeting, Mr. Norwood assured Plaintiff that he would allow her to work on special projects with him. While excited about that opportunity and believing she had

made progress, Mr. Norwood did not allow Plaintiff to assist him with projects. Plaintiff thereafter sent him several emails reminding him about their meeting and his assurances - but did not get a response from him.  Undeterred, Plaintiff would drop by Mr. Norwood's office to try to secure another meeting.  Norwood, however, avoided Plaintiff at all costs, even going as far as to change direction when he saw her in the hallway.

10.     Mr. Norwood's conduct towards black employees was not limited to avoiding one on one exchanges with Plaintiff.   Mr. Norwood would also not include Plaintiff and other black team members (including, for example, Will Garrett) in team luncheons.  Plaintiff spoke to her supervisor/manager, Craig Clopp, about Norwood's behavior, Mr. Clopp told Plaintiff "Matt is a good guy he just has to know you." Plaintiff, however, repeatedly tried to "get to know" Norwood - who had no problem laughing and talking with white team members but made no effort to talk with any team members of color.

11.     Unable to obtain a raise, Plaintiff applied for three positions with Frito-Lay in 2018 in the hopes of bettering her situation at the Company.  The positions included 1) eCommerce Fulfillment Associate  ; 2) Shopper Marketing Sr Analyst; and 3) Senior Space Optimization Analyst.

12.     On Friday, May 11, 2018, after putting in her application for the position as Senior Space Optimization Analyst, Plaintiff received an email from Julie Magee, who worked in Talent Acquisition, informing Plaintiff that her application was reviewed

team and escalated to the hiring manager. However, once Mr. Norwood received Plaintiff's application, he declined to move forward with Plaintiff.

13.    Seeing no chance for advancement under Mr. Norwood, Plaintiff also interviewed for a position as a Pricing Coordinator on another team.  Plaintiff notified her direct supervisor Mr. Clopp that she put in an application for the position. Mr. Clopp assured Plaintiff he would give her a good recommendation. The interview went well and the hiring manager, Matt LaFountain told Plaintiff he had to speak with Mr. Norwood before he could move forward with his decision. After a week and a half, Mr. LaFountain informed Plaintiff that they would move forward with another candidate.

14.    Plaintiff was qualified for each of the above positions for which she applied. Plaintiff's non-selection for the above positions was based on Plaintiff's race - black. On information and belief, the individuals selected for the positions were white.

15.    Plaintiff filed a Charge of Discrimination with the EEOC and the Equal Employment Opportunity Commission ("EEOC") on June 5, 2018. The EEOC thereafter issued a right to sue on August 23, 2021. This action is filed within 90 days of Plaintiff's receipt of the right to sue.

16.    After filing her charge of discrimination, Plaintiff was terminated from Frito-Lay in July 2020 as a result of an alleged layoff.  Similarly situated employees to Plaintiff with less experience were retained in the layoff.

## V.  Causes of Action

### COUNT I - DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT
### (Race)

17.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-16 above.

18. Plaintiff is an employee within the meaning of Title VII, 42 U.S.C. 2000e(f).

19. Defendant is an employer within the meaning of Title VII, 42 U.S.C. 2000e(b).

20. All conditions precedent to filing this action for race discrimination under Title VII have been met. Plaintiff timely filed with the the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against Defendant on June 5, 2018. Plaintiff received a Notice of Right to Sue from the EEOC on August 23, 2021 - which is within 90 days of the filing of this Complaint.

21. Defendant has violated Title VII, 42 U.S.C. 2000e *et seq.,* in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's race - Black in failing to promote Plaintiff and in other compensation matters.

22. As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages including back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and seeks to recover for those sums. Defendant's action was intentional, willful and malicious so that Plaintiff is entitled to recovery of exemplary damages.

23.     Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k).

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

24.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-23 above.

25.     Plaintiff engaged in protected activity under Title VII while·employed by Defendant including filing her charge of discrimination.

26.     Defendant engaged in intentional retaliation against Plaintiff for Plaintiff's participation in protected activity including terminating Plaintiff.

27.     Defendant's conduct violated Title VII.

28.     Plaintiff has satisfied all statutory prerequisites for filing this action for retaliation. *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981).

29.     Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which Plaintiff is entitled to damages.

30.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

31.     Defendant. has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

## **REQUEST FOR JURY**

PLAINTIFF HEREBY REQUESTS A JURY IN THIS MATTER.

        WHEREFORE, Plaintiff prays that Defendant be cited to appear and answer herein

and that on final trial, the Court enter judgment as follows:

(1)     Judgment in favor of Plaintiff against Defendant for all actual damages proximately caused by Defendant's breach of contract;

(2)     Judgment in favor of Plaintiff against Defendant for Plaintiff's court costs and reasonable attorneys' fees, expert witness fees, and deposition copy costs;

(3)     Punitive damages and damages for emotional distress;

(4)     Pre-judgment and post-judgment interest at the maximum rate allowable by law; and

(5)     Such other and further relief to which Plaintiff may be justly entitled.

Dated - November 12, 2021

Respectfully submitted,
THE HARTMANN FIRM
By: /s/ Clay A. Hartmann
Clay A. Hartmann
Texas State Bar No. 00790832

THE HARTMANN FIRM
400 N. St. Paul, Suite 1420
Dallas, Texas 75201
(214) 828-1822 - Telephone
clay.hartmann@thehartmannfirm.com

**ATTORNEYS FOR PLAINTIFF**

**PLAINTIFF'S ORIGINAL COMPLAINT - PAGE - 8**